Good morning, Your Honor. This is a fascinating issue. Counsel, please introduce yourself for the record. Sorry, Your Honor. Jacob Hafter, attorney for Dr. Tate. Quite frankly, we have Ms. Kathy Silver, who is an employee, CEO of a public hospital, who in response to an interaction between a physician and a patient's family, demands action outside of policy. Let's get to a threshold issue. Why isn't this case moved? Yeah, what's the current status? The appeal. Why isn't the appeal moved? Let's put it that way. Well, Your Honor, what's happened here is that unfortunately this process has taken such a long time and the plaintiff has been shut out of dealing with UMC in any fair way that they've actually taken away his privileges, which is the subject of the second case. We have another lawsuit. Correct. The old one's gone. You're here on a P.I., aren't you, a preliminary injunction? Yes, Your Honor. Which was denied. My understanding is that Dr. Tate no longer has clinical privileges at the hospital, so therefore he can't be reinstated. There's no – it's moved. The preliminary injunction has no effect. Your Honor, the reason why they made his privileges no longer – his privileges expire was because they put conditions on him as a result of this incident that he had no ability to address. He asked for a hearing in order to discuss those conditions. And one of the conditions they couldn't even do – But isn't all that bound up in the other lawsuit? You can get remedies there in the other lawsuit if you make your case, of course. It will be, but that lawsuit would seek relief for the due process violations that occurred with the revocation, in our opinion, of his privileges. We haven't pled the actual underlying event that Ms. Silver did as an administrative offer. The district court can put these two cases together, combine them, consolidate them. You have all your claims in one case. But without action from this Court, Your Honors – What action do you want us to do? What do you want us to do? This case is dead. What do you want us to do? Yeah, like the last case. What do you want to – how do you want the order to read? Your Honor, what we're asking for is for you to look at the underlying merits of the denial based on the fact that he said – that the judge said that there's no injury or due process violation. I mean, clearly, you have – But what relief could we order the district court to do here? I would ask, at the very least, to remand it back for reconsideration based on the fact that there may be a due process violation here, which he ruled that there was not, which I'm quite confused on, because you have a State actor who took action that affected a physician's clinical privileges without any due process or ability to be heard. What case is there that says that he has a due process right into a particular manner in which he's going to exercise his clinical privileges? He has a due process – He wasn't fired. He was removed from the schedule, and by being removed from the schedule, it's impossible for him to admit patients to the Department of Trauma. He has specific privileges of the Department of Trauma. And without being on the schedule, you are not able to admit patients. It's impossible to admit patients. And the bylaws clearly say that admitting patients is a right within any department's privileges. So he wasn't able to – he's not able to exercise those privileges. And yet he had no due process. He couldn't meet with anybody. He couldn't – he had no hearing, no opportunity to be heard. I thought these clinical privileges were allowed to lapse. They weren't – he wasn't – first of all, the hospital can't administer the clinical privileges anyway. That's done by the medical staff. So I – Right. I'm really stuck here. I don't – I really – let's be more specific. You're here on appeal raising the question of whether or not there's an abuse of discretion to deny the motion for a preliminary injunction. That's why we are here right now. Yes, Your Honor. Okay. Why – where is the abuse of discretion? Your Honor, the judge addressed the preliminary injunction in one line in his opinion and said that because he already decided that there was no due process violation, preliminary injunction must fail. Okay. So the two issues are inextricably intertwined. And so we have to look at the underlying issue with was there a due process violation. Well, let me ask you specifically, is there a property right to remain on the trauma schedule? I'm not talking about privileges now. I'm talking about to remain on the schedule, separate issue. You know what, Your Honor? I think that there is. Because the hospital has created such a – You think there is, but what do we look to to determine whether or not there is? If I may, Your Honor, the hospital has created a system where they have a separate department of trauma. They don't lump clinical privileges into department of surgery or the like. It's department by department. It's department by department, Your Honor. And so – but then they have rules that add additional burdens on them and regulations that add additional burdens on those people who practice within those departments. And one of those requirements in the department of trauma is to be on the on-call schedule, which is why the trauma services agreement became not really an issue in this matter. Back in 1991 when that was signed, there was a need because they worked on contract back in the day. But then over the last two decades, you know, they recognized that working on the trauma schedule is just a function of being in the department. If you notice, there was never a modification, and yet there was never a new writing, there was never an addendum, there was never a re-upping of that trauma services amendment, notwithstanding the amount that was compensated for every call that was taken increased. There are other terms that were in that trauma schedule that were changed or modified between the parties, but it wasn't in a writing because it really transformed from contract into a function of working within that department. And therefore, Your Honors, what we're saying is that they've made it a property right. They've made it an absolute requirement to be on the trauma schedule in order to exercise your privileges in the department of trauma. And so they've taken that and made it themselves a property right. Your Honor, what were the salary implications of what happened to your client? Well, the salary, you have to understand that the physician received a small No, I don't need to understand anything. I'm sorry, Your Honor, it's a phrase. I'm asking about salary implications of what happened to your client. His income is derived in two ways, one from pay from UMC, the hospital, and one from reimbursement for clinical services. The pay from UMC is minor, but the reimbursement from the clinical services is significant, and he lost probably 70% to 75% of his annual income as a result of this issue. That's what I was after. Thank you, Your Honor. Thank you. I'd like to, are there any other?  Why don't you reserve? I'd like to reserve my time. Very well. We'll hear from the hospital and the county. Good morning, Your Honors. May it please the Court. I'm Lisa Lackland, Counsel for the Medical and Dental Staff of the University Medical Center of Southern Nevada and Doctors Ellerton, Files, and Bernstein. Now, you are not the county. You're the separate institute. Yes. I represent the medical staff and the individual physicians. I'll refer to my clients collectively as the medical staff. Ms. Hansen. And excuse me, one other question. Are you going to share time with co-counsel? Yes. I was just, Ms. Hansen and I have agreed that I will go 10 minutes and she will go five. Very well. Just watch the clock. Thank you, Your Honor. I'd like to use my time to focus on four main points. The first is, as Your Honors have picked up on, this appeal should be dismissed as moot. Simply put, Dr. Tate is no longer on staff at UMC, so he cannot be returned to the trauma call schedule as requested. He no longer has privileges. He's no longer a member of the medical staff. Second, because the appeal is moot, there's no proper basis for this Court to review the dismissal of Dr. Tate's Section 1983 claim at this time. And there's certainly no basis for the Court to review and rule upon issues in Dr. Tate's second and separate lawsuits. What's the status of the second lawsuit? And were the two cases consolidated? The two cases were not consolidated. The second lawsuit, the defendants have filed motions to dismiss. They are fully briefed and awaiting the Court's decision. Third, even if the Court were to review dismissal of the Section 1983 claim, which I don't think is appropriate because there is no proper pendant appellate jurisdiction, but even if the 1983 dismissal were to be reviewed, the dismissal should be affirmed because plaintiff's complaint failed to state the essential elements of such a claim. As Your Honors have picked up upon, there's no property right to being put on the call schedule. The case laws replete that the right to take call, there is no right to take call. That is not a privilege that is — that implicates Fourteenth Amendment protection. And — Is there any contractual right that exists? There may be. There may be. So at most, this is — Does he have a contractual claim in this case? Yes. He does against the hospital, yes, not my defendants. Yes. So at most, this is a contract claim, and preliminary injunction would not be appropriate because the — And is there an adequate remedy at law? Yes, Your Honor. And the last point is the Court did not abuse its discretion in denying the preliminary injunction. The four-prong test for the grant of a preliminary injunction simply was not met. Even if we — Which is your strongest prong, likelihood of success? Pardon me, Your Honor? Which is your strongest prong, likelihood of success? Likelihood of success on the merits and also the likelihood of irreparable harm. We believe that Dr. Tate has not shown that, and that the — under Winter, he must show all four prongs. The sliding scale test, as touted by Dr. Tate, is no longer effective here. But before I get further into the specifics of the points, I think it's important to remind everyone that of the preliminary relief requested by Dr. Tate, I don't know what the order would look like. The preliminary injunction papers ask for an order, quote, in joining the defendants from restricting or limiting in any manner the plaintiff from participating on the trauma center's on-call schedule. The preliminary motion papers go on to state that granting this preliminary injunction will mean that UMC will, quote, remove the arbitrary and capricious blockage of plaintiff from the trauma department on-call schedule. That language is consistent with the language in the complaint. All the complaint talks about is removal from the trauma call schedule, which plaintiffs termed to be a de facto suspension of his clinical privileges. These repeated references to removal from the trauma call schedule are significant because they reflect what we are actually talking about here. Dr. Tate's complaint is really that UMC is no longer paying him to serve as one of its in-house on-call trauma physicians. His complaint isn't about the loss of overall hospital privileges. It's about him wanting UMC to continue paying him to work as an in-house physician in its trauma department, a position that fed patients to Dr. Tate. That's really what the position was. This distinction is key because while Dr. Tate may have a protective property interest in his clinical privileges overall, he has no protected property interest in working as an in-house physician for UMC. He has no protected property interest in being patient, given patients automatically by UMC, which is what he's asking for. This dismissal is moot. There is a separate lawsuit going on, and he can no longer practice medicine at UMC, period. Dr. Tate concedes in his opposition to the motion to dismiss that, quote, the ability to grant the preliminary injunction as originally requested may be moot, unquote. But then he goes on to argue that this appeal should not be dismissed for three main reasons, all of which are addressed in our reply brief. Counsel, what does the record tell us about the privileges? Am I correct in understanding that the privileges expired? They were never denied as such? They were never suspended as such? Back in around this — Departmental privileges. Yes. In December or in November of 2008, the medical staff issued a conditional renewal of privileges. Conditional what? Conditional renewal of privileges. They extended Dr. Tate's privileges, but asked him to complete anger management counseling, a psych evaluation, and a physical evaluation, and substance abuse testing. They said, once you complete those requirements, you need to complete those requirements in order to stay on staff. The first conditional renewal was in November of 2008. They gave him three months to comply, and at the end of those three months, he had not complied. Those periods were successively increased to allow him more time to complete those requirements. And finally, when he did not complete them as of August 31, 2009, his privileges lapsed. Anything further, counsel? No, Your Honor. If you do not have any additional questions. Thank you. We'll hear from co-counsel. Thank you. Good morning. Good morning. Lynn Hansen on behalf of Kathy Silver, the CEO of the hospital, Hospital UMC, and the Chief Medical Officer. I'm the Chief Medical Officer of the hospital, and I'm the Clark County County Commissioners. Is this a county hospital? Yes, it is. And it treats primarily the indigent. As you well know, this all began with an incident in which there was an altercation with a grandmother of a patient in which Dr. Tate used bad language and physically touched the grandmother in an inappropriate manner. And in response to that, the CEO of the hospital, knowing that trauma patients don't select their doctors because they come in in a crisis, in an emergency, and whoever's on call is the doctor that is selected, she decided that Dr. Tate needed remedial measures before she could subject patients to that kind of behavior again. And asked that the trauma department chair take Dr. Tate off trauma call until he repeated the same remedial measures my co-counsel has just described. Now, does that mean that he could no longer work in trauma? He could have, had he done the remedial measures. No, that's not good. Until he completed those. Correct, then he would have been. That meant he couldn't work in the trauma department. He wouldn't be on the on-call list. Right. He still maintained privileges to treat trauma patients if a trauma patient would request him, but wouldn't be on the on-call list called by the trauma admitting surgeon or doctor. He did not, and was not inclined to take the remedial measures, and therefore he remained off the trauma call schedule. As you well know from the law that we've cited to you in our briefs, taking somebody off an on-call schedule or a chair of a department has nothing to do with privileges. The hospital has no role in privileging doctors, nor does the CEO. The county commissioners have a very limited role in privileges in that they approve what the MEC, the Medical Executive Committee, suggests should be done with doctors' privileges, but they are primarily responsible for privileges. So the actions of the hospital, the CEO, and the county commissioners have nothing to do with privileges. But his privileges are ultimately terminated by the doctors. By the medical staff. By the medical staff. Correct. Anything further, counsel? No. Thank you very much. Thank you very much. Mr. Hefter, you have some reserved time. Thank you, Your Honor. I'd like to address what Ms. Hansen said last. What's interesting is she's saying that the hospital, because trauma patients don't get a select who their doctor is, had to take Dr. Tate off the on-call schedule to protect the patients who don't have any other choice. The interesting thing is, Your Honors, they left him on the on-call schedule for general surgery, which has the same exact characteristics. The only difference is Dr. Tate only got about a 20 to 25 percent of his income from general surgery. And really what hurt him was the ability not to practice in the trauma schedule. It hurt, I mean, for various reasons, economically, ego, et cetera. It was a punishment. And that was what was intended to be here. What about these renewals that you heard Ms. Lackland's... I'd like to address that also, Your Honor. You know, they created these conditional renewals, this three-month period, which is unprecedented. There's nothing in the bylaws that say you are allowed a three-month period of conditional renewal. And they said, not only do you need to get your drug and alcohol testing, and your physical inspection to make sure there's nothing wrong with you, but you need to undergo clinical treatment for anger management. Well, okay, fine. First of all, that sounds to us like some kind of adverse action that was taken on his privileges. We asked for a hearing, but he didn't get that. But during the time, he was allowed to practice. He was not allowed to practice on the on-call schedule. And we did try to comply. Excuse me, excuse me. The privileges were still intact. Technically. Now, the on-call schedule is a separate issue. Technically they were, but he still wasn't allowed to practice trauma medicine. But notwithstanding, Your Honors, he did try to comply. Okay? He went to the doctor at the foundation. I went with him. He gave urine. He gave hair samples. Or he tried to. He did get drug tested. He met with the psychiatrist. Okay? That report was never given to UMC or the medical staff. But can't you handle those issues in the case that's still pending? Right. But what happens from the time period from August 5th or 8th, when he was taken off the on-call schedule, until when they put that first due process violation in, related to his privileges, he gets no recourse for that. If this court doesn't do something to reverse the underlying issue in the judge's opinion in this matter. And the fact is, they have a policy that deals with disruptive physicians. And it's supposed to be administered by the medical staff to deal with the exact issues that is in this case.  and said, you know, you know, you know, you know,   they brought him in the hospital and they said, how should we deal with this? And this was by the CEO's own testimony, which is in the excerpt of record, at page 128 of volume 2, that we provided, where it said, you know, oh well, we'll just take him off the on-call schedule. Well, what happened to the disruptive physician policy? They violated their own policies because they knew that they would have to give him notice and opportunity to be heard if they went to the disruptive physician policy. And they decided not to do that. And they claimed it's a business decision. But it wasn't a business decision, because if you look at Ms. Silver's letter, she clearly says you need to be removed from the on-call schedule, and her letter is at page 198 of volume 2, the letter says, we're concerned about your ability to provide care, we're concerned about your interactions with others. Those are the same things that are addressed specifically by the disruptive physician policy. It wasn't a business decision. It's not, oh, you know, we're losing money and we've got to make a reduction in the number of trauma surgeons we have. And so all these cases that deal with hospitals being allowed to remove or a department chair removed from a schedule because of business decisions, and so there's no due process triggered by that, don't apply to this case. This case was one where the hospital admitted from the very beginning that they were taking action because of a concern of the behavior of the physician, which truly falls under the board of the disruptive physician policy, not business decisions. It was a medical staff issue from the beginning. And they tried to skirt it, and they tried to move around it, and they're trying to claim that it's not, but it is. And so what am I asking this court for? I'm asking this court to address, as it's allowed to, the underlying issue, finding there was a due process violation. It was a county hospital. These were actions under the colorist state law that there's not even a question as to whether or not there was opportunity to be heard or noticed. There was no due process afforded to this individual. When his ability to admit patients to the Department of Trauma was terminated on April, on August 8th. Do you want to say anything about mootness? Well, Your Honor, again, while you can't issue a preliminary injunction because he doesn't have the privileges, I think it would be within this court's discretion to look at the underlying issue. And don't jeopardize and don't punish the plaintiff because it's taken so long to get his argument and his matter heard before the courts. Thank you, Counsel. Anything further? No, Your Honor. Thank you. The case just argued will be submitted for decision.
judges: O'scannlain, Trott, Paez